UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ERIC BEAUCHAMP,<br><br>Defendant. | Case No.: 1:11-cr-0384 JLT<br><br>ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE<br><br>(Doc. 172) |

Eric Beauchamp moves the Court for an order terminating his supervised release early. He has been under supervision for approximately 21 of the 36 months ordered. Nevertheless, for the reasons set forth below, the motion is **DENIED**.

### I. Background[1]

In 1991, defendant was sentenced to state prison for 25 years-to-life after he was convicted of murder and attempted murder following his jury trial in the Los Angeles County Superior Court. (Doc. 108 at 3.) While in prison, correctional officers recovered a cell phone from Beauchamp's cell that contained images and other evidence indicative of a conspiracy to grow marijuana. (*Id*. at 4–5.) The cell phone showed a receipt made out to him I the amount of $6,000 to purchase supplies to grow marijuana along with a "how to" book on cultivating marijuana. *Id.*

---

[1] Much of this information comes from the Court's November 2020 order denying him compassionate release from prison. (Doc. 164)

1    The prison also intercepted a letter in which Beauchamp provided information
2  corroborating the evidence taken from the cell phone. (Doc. 108 at 5.) Beauchamp described a
3  "plot in Fresno" that was "ramped up to harvest" in a few months: "I did it all bro, research,
4  procurement, design, etc. and my farmer/partner has never seen shit grow so fast." (*Id*.) He
5  indicated that he intended to "turn over a new plot every three weeks, we are planted and
6  growing." *Id*. at 6. Authorities executing a search warrant at that property recovered 75 live
7  marijuana plants, over 900 grams of processed marijuana, over 900 grams of marijuana leaf, and
8  other evidence. (*Id*. at 5)

9    In connection with his sentencing, related to his conviction for conspiracy to cultivate
10 more than 50 marijuana plants in violation of 21 U.S.C. §§ 846 and 841(a)(1), the Court
11 determined his adjusted offense level was 17 and his criminal history placed him in category III.
12 (Doc. 108 at 18; Doc. 121.) This resulted in an advisory sentencing guideline range calling for a
13 term of imprisonment of between 30 and 37 months. (Doc. 108 at 18.) The U.S. Probation Office
14 recommended a sentence of 30 months. (*Id*.) However, in March 2014. the court sentenced
15 Beauchamp to a below-guideline sentence of 24 months in prison, with that federal term to run
16 consecutive to the state prison sentence defendant was serving at that time. The Court also order
17 that, once released, he was to complete 36-months of supervised. (Doc. 120; Doc. 121 at 2–3.)

18   On July 11, 2019, Beauchamp was released from state custody after he was granted parole
19 by the California Board of Parole Hearings. (Doc. 149-3 at 2–3.) Thereafter, on July 23, 2019, he
20 was transferred into federal custody and began serving the consecutive 24-month sentence
21 imposed in this federal case. (Doc. 149-2 at 4.) He was released from custody on March 31, 2021,
22 and his supervision is set to expire on March 30, 2024.

23   In his motion, Beauchamp argues that the Court should terminate his supervision early
24 because he has complied with the terms of supervision and has completed more than half of the
25 ordered term. (Doc. 168 at 1-2) He argues that the fact he murdered someone and attempted to
26 murder another 33 years ago are "immutable" facts, which should not preclude the early
27 termination of his supervision. Id. at 4. Other immutable facts include his arrests for assault with
28 a deadly weapon in 1985, unlawful sexual intercourse with a minor in 1988 and possession of

marijuana for sale in 1989. (Doc. 108 at 10) In addition, he remains on parole—and will remain on parole for the term of his life—due to his murder/attempted murder convictions. In addition, the Court has been advised by the United States Probation Office that, though no petition was ever filed, there was evidence linking him to letters laced with controlled substances mailed to a prisoner at the Federal Correctional Institution in Lompoc.[2] Even if the letters contained no narcotics, it appears that Beauchamp may have been in contact with a felon while on supervision. However, even without considering this information, the Court does not find that early termination of his supervision is warranted.

## II. Analysis

The Court acknowledges its discretion to terminate supervision early in this case. In considering the motion, the Court notes, first, that the underlying offense was quite serious and dangerous. Moreover, despite having been in custody for a lengthy time, rather than turning to legitimate methods of improving himself and his situation, he developed and executed a plan to grow marijuana and engaged others in his illegal operation.

Second, though Mr. Beauchamp has made good efforts at integrating into society, the term of supervision for 36 months was a fair and appropriate sentence necessary to protect the public. The fact that he has done was he is required to do while on supervision, given the facts of this case and on Mr. Beauchamp's history, does not justify early termination of his supervision.[3] Thus, after considering all of the § 3583(e)(1) factors, the motion for early termination of supervised release is **DENIED**.

IT IS SO ORDERED.

Dated:   **January 20, 2023**

UNITED STATES DISTRICT JUDGE

---

[2] However, the Court notes that this information was not investigated, so though the Court has concerns about whether he smuggled drugs into a prison, it does not base its decision here on that conduct.

[3] Indeed, employing Mr. Beauchamp's rationale would mean that many, if not most, supervisees would be entitled to early termination at the half-way point of their supervision. The Court rejects this argument.

3